IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KELLER POSTMAN LLC**<br><br>    Plaintiff,<br><br>  -vs-<br><br>**PPC SQUARED DIGITAL MARKETING, INC.**<br><br>**JARRED JOHNSON**<br><br>    Defendants. | Civil Action No.: 1:24-cv-2071 |

## COMPLAINT

Plaintiff, Keller Postman LLC ("Plaintiff" or "KP"), through undersigned counsel, brings this action for breach of contract against the PPC Squared Digital Marketing, Inc. ("PPC2") and its principal, Jarred Johnson (collectively, "Defendants"), and allege as follows:

## INTRODUCTION

1. Plaintiff KP entered into an Agreement for Services (the "Contract") with Defendant PPC2 through its principal, Defendant Jarred Johnson. Plaintiff arranged for payment of $175,000 to Defendants. Under the Contract, Defendants were to use 85% of the payment to purchase digital advertising and were permitted to take a 15% commission as their compensation. For months, Defendants did not purchase any advertising, but repeatedly stated that they would do so soon. Eventually, as expressly permitted under the Contract, Plaintiffs terminated the agreement and demanded a refund of the unused funds.

2. Mr. Johnson initially acknowledged Defendants' obligation under the Contract to return the unused funds, but stated that he no longer had the money, apparently because he had

appropriated the full $175,000 for his own use. Mr. Johnson stated that he would work to return the full amount at some unspecified time in the future, but if Plaintiff insisted on a prompt refund, Defendants would declare bankruptcy.

3. Plaintiff brings this action in breach of contract to recover a full refund of the unused funds, pre- and post-judgment interest, and attorneys' fees and costs, pursuant to the terms of the parties' Contract.

## PARTIES

4. Plaintiff, Keller Postman LLC is a law firm organized under the laws of Illinois. Its principal place of business is located at 150 N. Riverside Plaza, Suite 4100, Chicago, Illinois. KP is a citizen of Illinois, Virginia, Texas, and Florida.

5. Defendant PPC Squared Digital Marketing, Inc. is a Tennessee corporation with its principal place of business located at 142 5th Avenue North, Suite #B, Franklin, Tennessee. It is a citizen of Tennessee.

6. Defendant Jarred Johnson is the president and principal owner of PPC2. Upon information and belief, Defendant Johnson resides at 1429 Savannah Park Drive, Spring Hill, Tennessee and is a citizen of Tennessee.

## JURISDICTION & VENUE

7. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because it is between citizens of different states and the amount in controversy exceeds $75,000.

8. This Court has personal jurisdiction over Defendants insofar as Defendants transact business within the District of Columbia, including soliciting business from Plaintiff in the District of Columbia.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

10. Defendant PPC2 bills itself as "the ethical leader in mass torts marketing."[1] It claims to "serv[e] all mass torts law firms located in the United States."[2]

11. Plaintiff KP is a law firm that represents plaintiffs in mass tort actions across the country. It utilizes contract-based internet marketing services to advertise to potential clients and perform client intake in various mass tort litigations.

12. Jarred Johnson met KP's Managing Partner, Warren Postman, at an industry conference and followed up to suggest a lunch meeting in Washington, D.C. Mr. Johnson and Mr. Postman met for lunch on July 21, 2023, during which Mr. Johnson convinced Mr. Postman to retain PPC2 to purchase digital marketing on behalf of KP.

13. On or about July 27, 2023, KP and PPC2 entered into a Contract under which PPC2 agreed to "provide services . . . related to marketing and intake" as specified "in invoices or scopes of work." Ex. 1, Contract § 1.1. The Contract states that "[a]s Service Provider's sole remuneration for the Services provided hereunder, Principal will pay Service Provider its documented, out-of-pocket cost of marketing, intake, and related services, plus a commission on those services as identified in the SOW (the 'Service Provider's Fee')." *Id.* § 4.

14. The Contract also provided that "[e]ither Party may terminate this Agreement . . . at its convenience upon 30 days' prior written notice," Ex. 1, Contract § 7.1, or, in certain circumstances, without advance notice, *id.* § 7.2.

---

[1] *PPC² Agency*, https://www.ppcsquared.com/ (last visited July 8, 2024).
[2] *Id.*

15. Upon termination of the Contract, PPC2 agreed to "promptly return any amounts advanced by [KP] in respect of Service Provider Fees that had not, as of such termination or expiration, been applied to presumptively qualified claimants." Ex. 1, Contract § 7.3.

16. The Contract "constitutes the entire agreement of the parties . . . and supersedes all prior and contemporaneous representations, proposals, discussions, and communications, whether oral or in writing." Ex. 1, Contract § 15.

17. Further, the Contract provided that it "shall not be amended or modified . . . unless set forth in a document executed by duly authorized representatives of each party." Ex. 1, Contract § 20.

18. The Contract is governed by Illinois law. Ex. 1, Contract § 17.1.

19. The same day, in conjunction with the Contract, the parties also entered into a Scope of Work relating to two marketing campaigns ("July SOW"). Ex. 2, July SOW.

20. The July SOW was structured so that 85% of KP's payments were to be used by PPC2 to purchase advertising and related services for KP, while 15% could be retained by PPC2 as a commission after PPC2 performed its role of purchasing advertising and related services. Ex. 2, July SOW § II. Specifically, in connection with each campaign, PPC2 agreed to provide "content creation, content placement, media reporting and reconciliation, client intake, and medical records confirmation." Ex. 2, July SOW §§ IIIA & IIIB.

21. The July SOW also provided that KP pay $175,000 upon execution of the SOW to PPC2 for the promised services. Ex. 2, July SOW §§ IIIA & IIIB.

22. The July SOW permitted either party to terminate the SOW "by providing written notice." Ex. 2, July SOW §§ IV. Upon termination, "[KP] will promptly receive a refund of any deposited amounts in relation to the campaign not then expended on [the services promised]." *Id.*

23. Neither the Contract nor the July SOW permitted PPC2 to use the funds deposited for any purpose other than those described in the parties' agreements.

24. On July 31, 2023, KP arranged for its co-counsel, the Meyer Law Firm, to pay PPC2 $175,000, as provided for in the July SOW. Mr. Johnson confirmed receipt of the payment.

25. On October 4, 2023, KP sent Mr. Johnson an email terminating its campaigns with PPC2. It requested that Mr. Johnson return the deposits relating to the July SOW.

26. Following a call with Mr. Johnson on October 23, 2023, KP permitted PPC2 to continue work on one campaign. Mr. Johnson agreed to refund $50,000 relating to the July SOW.

27. Despite agreeing to do so, Defendants did not refund any of the unused funds.

28. Months later, on the 189th day after KP's co-counsel sent the deposit to PPC2, Mr. Johnson sent an email to KP about the reimbursement request, claiming: "[W]e cannot reimburse after 180 days." This restriction appears nowhere in the parties' Contract or July SOW.

29. Time continued to pass. By the nine-month mark, PPC2 had still not performed the contracted-for marketing services for KP under the July SOW.

30. On May 6, 2024, Mr. Postman sent Mr. Johnson an email stating, in part: "[P]lease consider the MSA terminated and refund us the outstanding balance."

31. Mr. Postman and Mr. Johnson subsequently had a telephone conversation during which Mr. Johnson tried to convince Mr. Postman to apply the payment to a new marketing campaign for a new case type. Mr. Postman agreed to consider this request but, after doing so, he emailed Mr. Johnson on May 15, 2024, to again request that PPC2 refund the outstanding balance.

32. The same day, Mr. Johnson responded to Mr. Postman's email requesting wire information, ostensibly to refund the outstanding balance. KP provided the wire information.

33. PPC2 did not wire the refund to KP.

34. KP contacted Mr. Johnson again on May 28, 2024 and June 3, 2024, inquiring about the status of the refund.

35. On June 4, 2024, Mr. Johnson responded with a message that did not dispute his obligation to repay the funds. Rather Mr. Johnson stated that he would refund the money, but that he no longer had the funds in his possession and would repay the money at an unspecified time in the future: "Right now, I am working on this. Refunding in full now, means I file a chapter 11 and bankrupt the company and this is my families [sic] only source of income." He continued, "[O]nce our budget can allow, I will process your request."

36. On June 6, 2024, KP sent PPC2 a letter demanding repayment of the $175,000 deposited pursuant to the July SOW. KP offered to institute a payment plan under which PPC2 would "agree in writing to return all of [KP's] funds within a six-month period."

37. PPC2 rejected KP's offer of repayment over time, and instead adopted the position that PPC2 provides "no refunds" with "no exceptions," contrary to the terms of the Contract and July SOW.

38. As of the filing of this action, PPC2 continues to refuse to refund the outstanding balance, in violation of the terms of the parties' Contract and July SOW.

39. Upon information and belief, Mr. Johnson is the sole shareholder and president of Defendant PPC2.

40. Mr. Johnson and PPC2 failed to observe corporate formalities, as evidenced by Mr. Johnson's misappropriation of the funds at issue in this action. KP, through its co-counsel, deposited the funds with PPC2 solely for the purpose of contracted-form marketing services. But PPC2 provided no marketing services under the July SOW, and Mr. Johnson used the funds instead to provide a "source of income" for his family.

41. Mr. Johnson failed to maintain an arm's-length relationship between himself and PPC2, which he controlled. Upon information and belief, he used PPC2's resources for his own personal benefit in contravention of the contracts between KP and PPC2.

42. Further, as indicated by Mr. Johnson's own statements, PPC2 lacks adequate capitalization and/or faces insolvency as a result of Mr. Johnson transferring funds from PPC2's accounts to his personal accounts. Such transfers were accordingly fraudulent transfers.

43. As a result, Defendant Johnson is jointly and severally liable for PPC2's breach of the Contract and July SOW.

## CAUSE OF ACTION

### COUNT I
### Breach of Contract

44. Plaintiff repeats and incorporates by reference the allegations set forth above.

45. Defendant PPC2 entered into a legally binding contract with Plaintiff.

46. Plaintiff provided payment in the amount of $175,000 to Defendant PPC2 in reliance on its agreement to provide marketing services. Defendant PPC2 did not provide the agreed upon services.

47. Plaintiff terminated the Contract and requested a refund of unused funds.

48. Defendant PPC2 had a legally enforceable duty to refund Plaintiff's payment in full upon request because it did not perform the agreed upon work and Plaintiff terminated the Contract and July SOW.

49. Defendant PPC2 refused to refund the unused funds in violation of the termination provision in the parties' Contract and July SOW.

50. By failing to refund Plaintiff's payment, Defendant PPC2 breached its contractual obligations to Plaintiff.

51. Upon information and believe, Defendant PPC2 is a mere façade and does not have an identity separate and apart from Defendant Johnson. Accordingly, Defendant Johnson may be held individually liable for PPC2's debts and obligations.

52. Plaintiff suffered injuries as a result of Defendants' breach, including the loss of its $175,000 deposit, interest, and costs incurred to recover such funds.

53. Accordingly, Defendants are jointly and severally liable to Plaintiff for repayment of unused funds up to $175,000, plus attorneys' fees and prejudgment interest, and any other remedy required under the Contract and to make Plaintiff whole.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court grant them the following relief:

a. grant judgment against Defendants, jointly and severally, in favor of Plaintiff for damages arising from Defendants' breach of contract;

b. award Plaintiff actual or compensatory damages in such amount to be determined at trial and as provided by applicable law;

c. award Plaintiff pre-judgment and post-judgment interest;

d. award Plaintiff reasonable attorneys' fees as provided by the Contract;

e. award Plaintiff costs and expenses of this action; and

f. any other relief the Court may deem just and proper.

Dated: July 16, 2024                                  Respectfully submitted,

/s/ *Roseann R. Romano*
Warren D. Postman (995083)
  wdp@kellerpostman.com
Roseann R. Romano (1034895)
  roseann.romano@kellerpostman.com
KELLER POSTMAN LLC
1101 Connecticut Avenue NW, Suite 1100
Washington, DC 20036
Phone: 202-378-0649

*Attorneys for Plaintiff*